IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CYNTHIA CHRISTIAN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 3:10-cv-0455 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Brown |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

## ORDER

Pending before the Court is Plaintiff Cynthia Christian's ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 14), filed with a supporting Memorandum (Doc. No. 15). Defendant Commissioner of Social Security ("Defendant" or "Commissioner") filed a Response in Opposition (Doc. No. 18), to which Plaintiff replied (Doc. No. 21). Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 22.) Plaintiff filed Objections to the Report. (Doc. No. 23.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, Plaintiff's Motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

**I. BACKGROUND**

*A. Procedural Background*

Plaintiff filed an application for Supplemental Security Income ("SSI") on May 21, 2007, alleging disability beginning on December 1, 1980 due to bipolar and anxiety disorders. (Tr. 118-23.) Plaintiff's application was first denied on August 28, 2007, and again after reconsideration on November 9, 2007. (Tr. 52-53, 45-55.) Plaintiff's request for a hearing

1

before an Administrative Law Judge ("ALJ") was granted, and the hearing took place on September 3, 2009, before ALJ John R. Daughtry. (Tr. 62, 24-51.) The ALJ denied Plaintiff's claim on September 30, 2009. (Tr. 9-23.) The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 21, 2007, the application date. 20 C.F.R. § 416.971 *et seq*.

2. The claimant has the following severe impairments: affective disorder (bipolar disorder), anxiety disorder, and substance abuse disorder. 20 C.F.R. § 416.920(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925 and 416.926.

4. After careful consideration of the entire record, the undersigned find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels which includes no limitations in the ability to lift, carry, stand, walk, sit, climb, balance, kneel, crouch, crawl, stoop, push, pull, reach; but with the following non-exertional limitations: can understand, remember, and carry out simple and detailed 3 step instructions; can maintain concentration and persistence necessary to perform simple and detailed 3 step tasks; should have no contact with the general public; can relate to coworkers on an occasional basis; may require occasional direct supervision; and can adapt to infrequent changes in the workplace.

5. The claimant is unable to perform any past relevant work. 20 C.F.R. § 416.965.

6. Born on October 16, 1961, the claimant was 45 years old on the date the application was filed on May 21, 2007, which is defined as a younger individual age 45-49. 20 C.F.R. § 416.963.

7. The claimant has at least a high school education and is able to communicate in English. 20 C.F.R. § 416.964.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 416.969 and 416.969(a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 21, 2007, the date the application was filed. 20 C.F.R. § 416.920(g).

(Tr. 14–22.)

On March 10, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner in this case. (Tr. 1-3.) On May 10, 2010, Plaintiff filed this action to obtain judicial review of the ALJ's final decision, pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On July 27, 2010, Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 14), to which the Government responded on October 12, 2010 (Doc. No. 18). Plaintiff filed a Reply on October 25, 2010. (Doc. No. 21.) On November 22, 2010, Magistrate Judge Brown recommended that the Commissioner's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 22.) Plaintiff asserts four objections to the Magistrate Judge's findings on November 22, 2010, specifically:

1. Plaintiff objects to the Magistrate Judge's recommendation that ALJ did not err by determining that Plaintiff's substance abuse disorder was a severe impairment without first determining whether her affective and anxiety disorders were severe impairments and disabling without considering plaintiff's substance abuse problem.
2. Plaintiff objects to the Magistrate Judge's recommendation that ALJ did not err by not addressing whether Plaintiff's severe mental conditions would exist and be disabling, even considering her substance abuse.
3. Plaintiff objects to the Magistrate Judge's recommendation that ALJ did not fail to consider medical expert testimony which proves that Plaintiff is disabled.
4. Plaintiff objects to the Magistrate Judge's recommendation that ALJ did not fail to properly consider vocational expert testimony.

(Doc. No. 23.) The Court discusses the merits of Plaintiff's objections below.

*B. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report. (Doc. No. 22 at 2-12.)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to

Plaintiff's claim on the merits than those of the ALJ, the findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly evaluated Plaintiff's mental impairments and substance abuse.*

As the Magistrate Judge did, this court will consider Plaintiff's first two objections together because they assert closely related arguments. A claimant cannot receive disability benefits if alcohol or drug abuse is a material contributing factor to the finding of disability. 42 U.S.C. § 423(d)(2)(C). In order to apply this condition, the ALJ must determine whether the claimant would still be disabled if she stopped using drugs and alcohol. 20 C.F.R. § 404.1535. The Magistrate Judge found that the ALJ properly evaluated the effect of Plaintiff's substance abuse in finding that, although Plaintiff had medically determinable mental impairments, the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. No. 22 at 15-16.) Plaintiff, however, asserts that (1) the ALJ erred by reaching that decision without considering whether her anxiety or bipolar disorders were disabling regardless of her substance abuse and (2) substantial evidence establishes that her mental impairments do, in fact, render her disabled. (Doc. No. 23 at 2-3.) Plaintiff also contends that the ALJ improperly failed to address whether her mental conditions would exist and be disabling even considering her substance abuse. (Doc. No. 23 at 3-4.) Specifically, Plaintiff claims that the ALJ did not assign her a residual functional capacity ("RFC") that took her substance abuse into account. (Doc. No. 23 at 3.)

Because Plaintiff's first and second objections seem to assert opposite and mutually exclusive propositions – first, that the ALJ did not consider Plaintiff's symptoms without

5

substance abuse and, second, that the ALJ did not consider Plaintiff's symptoms with substance abuse – it is not clear whether Plaintiff may have inadvertently misstated her second objection. Defendant, in his Response to Plaintiff's Motion for Judgment on the Administrative Record, assumed that Plaintiff meant to state her objection as the ALJ's failure to address "whether her severe mental conditions would exist and be disabling even with[out] substance abuse." (Doc. No. 18 at 2.) Plaintiff's Reply does not address whether the objection is a misstatement or Defendant is mistaken and the objection is correct as written. The Magistrate Judge also appears to have assumed that Plaintiff misstated her second objection, based on his conclusion that "Plaintiff's first two statements of error are essentially the same. Plaintiff contends that her anxiety and bipolar disorders should have been considered disabling in the absence of any substance abuse." (Doc. No. 22 at 15.) Plaintiff's Objections to the Report restate the original objection verbatim, without clarifying whether the objection contains a typographical error or attempting to reconcile the second objection with the seemingly contradictory first objection. (Doc. No. 23 at 3.)

Ultimately, Plaintiff's first two objections and the question of whether the second objection is a misstatement are moot, because the ALJ properly determined that Plaintiff is not disabled for the purposes of receiving Social Security benefits. When assessing whether an individual suffers from a disabling mental impairment such that the claimant is entitled to social security benefits, the ALJ must engage in a five-step sequential evaluation. 20 C.F.R. § 416.920(a). If, at any step, the ALJ reaches a determination that the claimant is disabled or not disabled, the evaluation will not proceed to the next step.

At the second step, the ALJ must consider whether the claimant suffers from a mental impairment or combination of mental impairments that is "severe." 20 C.F.R. § 416.920(c). To

6

evaluate the severity of a mental impairment, the ALJ must consider two factors: whether the claimant has a "medically determinable mental impairment" and the "degree of functional limitation resulting from the impairment." 20 C.F.R. § 404.1520a. The determination as to whether the claimant has a medically determinable mental impairment requires the ALJ to evaluate the "paragraph A" criteria, which are the "symptoms, signs, and laboratory findings" of the alleged medically determinable mental impairment. *Id.* Having determined that the claimant does have a mental impairment, the ALJ must rate the claimant's degree of functional limitation in four functional areas using the "paragraph B" criteria: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* The ALJ must document his application of the A and B criteria in his opinion. *Id.* If the claimant does not suffer from a severe mental impairment, she is not disabled. *Id.*

Between steps three and four, the ALJ must determine the claimant's RFC, 20 C.F.R. § 416.920(e), which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." (Tr. 15.)

The Magistrate Judge in this case found that, contrary to Plaintiff's assertion, the ALJ appropriately evaluated the severity of Plaintiff's impairments at step two of the sequential evaluation on the basis of the paragraph A and B criteria and appropriately described the application of his evaluation. The Court agrees with the Magistrate Judge's reasoning:

> The ALJ noted that Plaintiff had been hospitalized more than once for possible suicidal ideation and had been treated for bipolar and panic disorder, among other illnesses. (Tr. 16.) The ALJ also noted that Plaintiff had been given GAF 30 to 52, with the most recent being 40. (Tr. 16-20.) A GAF score below 50 "indicates a serious impairment in social or occupational functioning." (Tr. 20.) As the ALJ properly stated, however, GAF ratings "must be

7

> considered in the context of the record as a whole to obtain a longitudinal picture of the overall degree of functional limitation." (*Id.*) The ALJ was persuaded that Plaintiff's illness was not disabling because her mood stabilized with medications and treatment. (*Id.*) Plaintiff was also able to adequately perform activities of daily living, including helping her mother and visiting with friends on occasion. (*Id.*)

(Doc. No. 22 at 15-16.)

Further, because the assignment of an RFC is based on detailed analysis of the same paragraph B criteria evaluated at step two of the five-step sequence (Tr. 15), and the ALJ properly considered Plaintiff's impairments at step two, including substance abuse, based on the paragraph A and B criteria, the Court agrees with the Magistrate Judge that the above reasoning also leads to the conclusion that the ALJ's assignment of an RFC between steps three and four appropriately considered all of Plaintiff's impairments. Thus, Plaintiff's argument in her second objection that "the ALJ did not assign Plaintiff an RFC based on her mental impairments and the limitations she would have due to these impairments with substance abuse" is baseless, regardless of whether that objection is a misstatement or correct as written. (Doc. No. 15 at 8.)

Plaintiff further asserts that, in addition to the fact that the ALJ incorrectly evaluated Plaintiff's mental impairments at the step-two severity evaluation, "there is evidence that Plaintiff is disabled, despite any substance abuse." (Doc. No. 15 at 8.) However, the Court agrees with the Magistrate Judge's recommendation that the ALJ did not err at step two of the five-step sequence in finding that Plaintiff's mental impairments were not severe. As such, Plaintiff's assertions that the disability determination would have turned out differently had the severity evaluation been conducted correctly are moot, because the determination properly ended at step two. Because of this, the Magistrate Judge did not consider the details of the arguments

8

in Plaintiff's objections; however, even if those arguments were not moot, they are meritless for the reasons discussed below.

Plaintiff's first objection, that the ALJ did not properly consider Plaintiff's affective and anxiety disorders separately from her substance abuse, is proven false by the ALJ's statement that he considered the claimant's mental impairments "singly and in combination." (Tr. 14.) Thus, Plaintiff's assertion that the ALJ did not separately consider the mental impairments is false based on the plain text of the ALJ's opinion.

Furthermore, the case that Plaintiff relies on to support her objection, *Spence v. Astrue*, does not apply here. In *Spence*, the ALJ determined that plaintiff was not eligible for Social Security benefits because, though the plaintiff suffered from depression that may have been disabling, substance abuse caused the depression. *Spence v. Astrue*, No. 1:06-CV-217, 2008 WL 444663, at *1-2 (E.D. Tenn. Feb. 15, 2008). The court found that the ALJ erred by not making a determination as to whether the depression would be disabling if the substance abuse were not taken into account. *Id.* The difference between *Spence* and the case at bar is that the ALJ in *Spence* denied the plaintiff benefits because substance abuse caused the plaintiff's potential disability, while here, the ALJ denied benefits because Plaintiff is not disabled at all. Thus, the causal role between Plaintiff's substance abuse and her mental impairments is irrelevant, because those impairments do not constitute a disability. *Spence* is clearly distinguishable and does not prove that the ALJ in this case improperly evaluated Plaintiff's mental impairments.

Finally, Plaintiff's second objection that the ALJ did not assign Plaintiff an RFC based on her mental impairments including her substance abuse impairment is baseless. Nowhere in the ALJ's analysis of Plaintiff's RFC does he limit his finding to only Plaintiff's non-substance-abuse impairments. Rather, he determines Plaintiff's RFC "after careful consideration of the

9

entire record." (Doc. No. 22 at 15.) Thus, the ALJ's determination at step five of the five-step sequence that numerous jobs in the economy are available to Plaintiff is not vulnerable to challenge on the basis of an improperly determined RFC. This conclusion is true regardless of whether Plaintiff's objection is a misstatement because, either way the objection is interpreted, it incorrectly alleges that the RFC is based on an improper evaluation of Plaintiff's mental impairments. Per the preceding analysis, this is simply not the case.

> B. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly followed medical expert testimony.*

The Magistrate Judge found that the ALJ properly followed medical expert ("ME") Dr. Rebecca Sweeney's testimony regarding Plaintiff's substance abuse and GAF scores. (Doc. No. 22 at 16.) However, Plaintiff asserts two specific errors regarding the ALJ's treatment of the ME's testimony. First, Plaintiff contends that the ALJ erred by not considering her anxiety disorder separately from her substance abuse, despite the ME's testimony that substance abuse was not material to Plaintiff's anxiety disorder. (Doc. No. 23 at 4.) Second, Plaintiff contends that the ALJ did not accord proper weight to the ME's testimony regarding Plaintiff's GAF scores. (*Id.*)

The Social Security regulations do not require the ALJ to defer to a non-treating medical expert's opinion. 20 C.F.R. § 404.1527. The Court agrees with the Magistrate Judge's observation that Plaintiff's first argument is similar to Plaintiff's first two objections and that the same reasoning, detailed above, applies to refute both arguments: "[T]he ALJ properly evaluated Plaintiff's illness and found that her impairments did not meet or equal the criteria of the listed impairments, either singly or in combination." (Doc. No. 22 at 16.)

Plaintiff's second argument is meritless because a claimant's GAF scores are not determinative of disability. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."). The ME herself testified that a patient's mental health should be assessed "on the totality of the evidence and not just the GAF scores." (Tr. 19.) Thus, the ALJ did, in fact, follow the ME's guidance when he considered Plaintiff's GAF scores alongside her response to medication and treatment, her ability to interact with others, her performance of daily household activities, and other contextual factors. (Tr. 20.) The Court also agrees with the Magistrate Judge's recommendation that the ALJ adequately explained his reasoning for not giving the GAF scores controlling weight. The ALJ found that the examples of Plaintiff's mental condition and functional abilities were not consistent with the stringent limitations suggested by the low GAF scores and, in light of the medical expert's testimony that GAF scores must be considered in the context of Plaintiff's general improvement, did not give controlling weight to the GAF scores. (Tr. 20.)

> C. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly followed vocational expert testimony.*

In assessing a claimant's disability, the ALJ may, but is not required to, rely on the testimony of a vocational expert ("VE") as to the claimant's ability to perform past relevant work or other available work. 20 C.F.R. § 404.1560(b)(2); *Ramos v. Sec'y of Health & Human Servs.*, 514 F. Supp. 57, 65 (D.P.R. 1981). A VE's testimony may include answers to a hypothetical proposed by the judge involving a person with the same mental and physical limitations as those

of the claimant. 20 C.F.R. § 404.1560(b)(2). Although testimony by a VE is not required, the Magistrate Judge found that the ALJ in this case properly construed and followed the VE's testimony. The ALJ relied on the VE's testimony, which consisted of answers to questions based on the ALJ's hypothetical, to determine that there were jobs available that Plaintiff could perform in spite of her mental limitations. (Doc. No. 22 at 17.) Plaintiff, however, contends that, while the VE initially suggested three jobs that Plaintiff could perform, the VE recanted that statement upon further questioning, rendering the ALJ's finding that there are jobs available to Plaintiff untenable. (Doc. No. 23 at 5, 6.) The discrepancy stems from two opposing interpretations of the VE's testimony. The Court adopts the Magistrate Judge's account of the testimony:

> Ms. Brenton first identified the only past relevant work experience Plaintiff had, that of telephone solicitor. (Tr. 47.) The ALJ the[n] posed a hypothetical to Ms. Brenton, which shared the same residual functional capacity he assigned to Plaintiff. The hypothetical included an instruction that the individual should have no contact with the general public. (Tr. 48.) Ms. Brenton identified three medium light jobs that would be appropriate for the hypothetical individual – packer, machine feeder, and housekeeper. At this point, the ALJ asked Ms. Brenton, "I guess I should ask you could such a hypothetical individual perform the job that you identified?" (*Id.*) Ms. Brenton replied, "Well she would have – she would interact with the public, although it would not be on a face-to-face basis and I don't believe that would meet your hypothetical. (*Id.*)

(Doc. No. 22 at 17.)

Plaintiff asserts that when the VE stated that the job would not meet the ALJ's hypothetical, she was referring to the three jobs of packer, machine feeder, and housekeeper. (Doc. No. 23 at 5.) Plaintiff asserts, essentially, that the VE offered examples of jobs that someone with Plaintiff's RFC could perform and then thought better of her testimony and

12

changed her position to say that Plaintiff could not, in fact, perform those jobs. (*Id.*) The Commissioner asserts, on the other hand, that the VE was actually referring to the telephone solicitor job when he stated that it would not meet the ALJ's hypothetical. Thus, the Commissioner contends, the VE did not retract her testimony that Plaintiff could perform the jobs of packer, machine feeder, and housekeeper, meaning that the ALJ's finding is sound that jobs do exist that Plaintiff can perform. (Doc. No. 18 at 13.)

The Court agrees with the Magistrate Judge's finding that the Commissioner's interpretation of the VE's testimony is more reasonable. First, the ALJ's use of the singular word "job" indicates that his question refers to the singular job of telephone solicitor, rather than the multiple jobs of packer, machine feeder, and housekeeper. Additionally, the VE's description that the position would require the hypothetical claimant to interact with the public, but not on a face-to-face basis, applies more readily to a telephone solicitor than to a packer, machine feeder, or housekeeper. Thus, the Magistrate Judge's conclusion is proper that the VE testified only against Plaintiff's ability to work as a telephone solicitor. The VE did not testify that Plaintiff would be unable to work as a packer, machine operator, or housekeeper.

**IV.   CONCLUSION**

For the reasons stated above, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** Magistrate Judge Brown's Report in its entirety. The decision of the Commissioner is **AFFIRMED**.

It is so ORDERED.
Entered this 2nd day of August, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT